**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jeffrey Allen PENDEGRAPH and**
**Clifford Eugene Mickels,**
**Defendants-Appellants.**

No. 85–7276.

United States Court of Appeals,
Eleventh Circuit.

June 23, 1986.

Rehearings Denied Aug. 12, 1986.

J. Harry Blalock, Birmingham, Ala., for Pendegraph.

James L. O'Kelley, Birmingham, Ala., for Mikels.

Frank W. Donaldson, U.S. Atty., Shirley I. McCarty, Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before RONEY and CLARK, Circuit Judges, and FAIRCHILD *, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge:

Defendants Jeffrey Allen Pendegraph and Clifford Eugene Mickels appeal their convictions for armed bank robbery and bank robbery, respectively, under 18 U.S.C. § 2113(a), (d) and 18 U.S.C. § 2113(a). For the reasons set forth below, we affirm the judgment as to Mickels; as to Pendegraph, the judgment is affirmed in part and reversed in part.

* Honorable Thomas E. Fairchild, Senior U.S. Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

The Government's theory of the case is that Randy Hester (not tried in these proceedings) committed the bank robbery with the assistance of Pendegraph (who drove the first getaway car) and Mickels, who were tried together. One of the principal problems in the case is that at trial the Government introduced against Mickels his post-arrest statement, which provided many of the details of the activities of the three men. The statement was clearly inadmissible against Pendegraph, who argues that even though the statement was redacted so as not to identify him by name, its use at the joint trial violated *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Mickels did not testify.

Omitting at this point any detail supplied by Mickels' statement, the facts shown at trial were as follows: on January 7, 1985, Pendegraph and his roommate, Randy Hester, borrowed Hester's brother's car. Later that evening, they were seen talking mysteriously together by Pendegraph's roommate, Debbie Dill. The next morning, a car whose description matched that of Hester's brother's vehicle, was seen driving away from a park by a lake near Florence, Alabama, by a T.V.A. employee, who identified Pendegraph at trial as a passenger in the car. At approximately 9:12 AM, a white male with a gun, who was described as tall with a light blond mustache, entered the AmSouth Bank in Florence and announced, "This is a robbery." After a teller filled his bag with cash and a dye pack, he backed out of the bank, and escaped in a waiting car, described as an old, cream colored Chevrolet, driven by another man.

Around 9:30 AM, a car similar to Hester's brother's vehicle pulled up to the curb on a Florence street near a high school. Red smoke poured from the car and from an object that was then thrown out of the car. Three men got out, and red-stained currency was scattered over the sidewalk. One of the men put some of the money back into the container, and then drove off with one companion; the third man ran away.

Around 10:00 AM, Pendegraph and Hester went to Dill's place of employment. Pendegraph told her that they had done something and had to go somewhere, and to tell his children he loved them. Later, Dill cashed Pendegraph's check, brought to her, however, by Hester alone. Subsequent physical analysis revealed that a bag belonging to Dill was dye stained, as were Pendegraph's jacket and check. An investigator discovered red dye stains on the upholstery in Hester's brother's car. A beige, 1966 Chevrolet was found later that day "hot wired" in the high school parking lot; its owner testified that it had been stolen that morning from the parking lot of his place of employment.

Pendegraph and Mickels were later arrested. Mickels then gave a statement to police implicating himself, Hester and Pendegraph. The following statement, as redacted, was read to the jury:

\* \* \* \* \* \*

I [Mickels] was contacted by an individual at 10:00 P.M. on January 7, 1985 who wanted me to drive on the following day, for which I would receive two hundred to five hundred dollars. I was not aware that it was for the purpose of driving for a bank robbery. At approximately 2:30 or 3:00 in the morning on January 8, 1985, I rode with this individual and Randy Hester to Florence at approximately 4:30 in the morning. We drove to a park by a lake where Randy put on green overalls. We were in the park for approximately thirty minutes. We left the park and drove around town approximately three miles from a high school. I dropped an individual off. At a point midway between there and the high school, I left Randy. I continued to the high school where I waited for approximately twenty minutes. When they arrived in the parking lot of the high school, I was lying in the back seat of the vehicle, which is described as a small foreign automobile, white in color. Both entered the car through the driver's side throwing clothing and a sports bag on

the floorboard by the bucket seats and by the back floorboard.

The sports bag is described as being light blue or gray in color with black handles. As we drove from the school parking lot, Randy made the statement, "The gun." As the sports bag was opened, red gas poured out filling the inside of the vehicle, spilling over into the back seat. Randy instructed to [sic] throw the sports bag out the window. As Randy was stopping the vehicle, he said "The gun."

Once the vehicle was stopped, the three of us exited from the vehicle. I believe that Randy retrieved the sports bag, and I ran from the vehicle through a grassy area to a wood area by a big brick building.

\* \* \* \* \* \*

## I

Mickels raises several arguments for reversal, including the sufficiency of the evidence generally, and as to proof of the federally insured status of the bank; jury instructions regarding intent; and denial of his motion for the severance of his trial from Pendegraph's. As we find none of them to be persuasive, Mickels' conviction is AFFIRMED.

## II

Pendegraph raises several issues on appeal, but we need reach only one. He argues that he was denied his Sixth Amendment right of confrontation when the redacted version of Mickels' confession was read to the jury.

■ In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Court held that the admission of a non-testifying defendant's statement in a joint trial, implicating a co-defendant, violated the Confrontation Clause. Because the declarant is unavailable for cross-examination, the "powerfully incriminating extrajudicial statements of a co-defendant who stands accused side by side with the defendant" cannot be tested. *Id.* at 135, 88 S.Ct. at 1628. However, if otherwise admissible, the statement may be admitted if all references to the co-defendant are deleted. *United States v. Key*, 725 F.2d 1123, 1126 (7th Cir.1984). The introduction of a redacted confession may still violate the *Bruton* rule if the statement compels a directly inculpating inference. *United States v. Garrett*, 727 F.2d 1003, 1013–14 (11th Cir.1984); *see United States v. Satterfield*, 743 F.2d 827, 849 (11th Cir.1984); *English v. United States*, 620 F.2d 150, 152–53 (7th Cir.1980); *United States v. Hicks*, 524 F.2d 1001, 1003 (5th Cir.1975).

■ We believe that Mickels' statement, even as redacted, clearly implicated Pendegraph. In light of the other evidence presented by the Government, including the testimony of Dill and the T.V.A. employee, and the physical evidence of dye stains on Pendegraph's check and jacket, the jury could very easily infer Pendegraph to be the "individual" referred to in Mickels' confession, if only because there was no other possibility. *See United States v. Burke*, 700 F.2d 70, 85 (2nd Cir.1983) (redacted statement clearly inculpatory where jury is aware that names have been deleted and in light of other evidence could infer they included co-defendant's).

■ However, the statement must also be vitally important to the Government's case in order for its introduction to create a constitutional violation. *United States v. Key*, 725 F.2d at 1126; *English v. United States*, 620 F.2d at 152. Here, any error was harmless beyond a reasonable doubt because there was persuasive evidence, without Mickels' confession, to convict Pendegraph of aiding and abetting Hester in robbing the bank; thus, the *Bruton* error does not require a new trial as to the lesser offense of § 2113(a) bank robbery. *Hall v. Wainwright*, 559 F.2d 964, 967 (5th Cir.1977); *United States v. Gray*, 462 F.2d 164, 166 (5th Cir.1972); *Posey v. United States*, 416 F.2d 545, 551 (5th Cir.1969).

■ The admission of Mickels' statement was not harmless, however, as to Pendegraph's conviction for armed bank robbery under 18 U.S.C. § 2113(d). There

is no evidence directly showing knowledge on Pendegraph's part that Hester would use a gun in the robbery. We have considered the possibility that the jury could infer such knowledge from the evidence of joint planning, Hester's use of a gun in the robbery, and Pendegraph's participation, presumably as driver of the getaway car. It seems to us, however, that this is not sufficient evidence for a jury to find beyond a reasonable doubt that Pendegraph aided and abetted in the use of the gun; the jury's verdict was probably due to its hearing the reference to the gun in Mickels' statement. Therefore, we AFFIRM the judgment against Pendegraph insofar as it finds him guilty of the lesser included offense, but we VACATE it insofar as it finds him guilty of the greater offense and imposes sentence for the greater offense. Pendegraph's case is REMANDED for re-sentencing on the lesser offense of bank robbery under § 2113(a).