[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-16403
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 7, 2010
JOHN LEY
CLERK

D. C. Docket No. 09-20038-CR-ASG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BIENVENIDE BAUTISTA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 7, 2010)

Before DUBINA, Chief Judge, CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant Bienvenide Bautista challenges the sufficiency of the evidence

relating to his conviction for one count of knowingly, and with intent to defraud, possessing device-making equipment, in violation of 18 U.S.C. § 1029(a)(4).

We review *de novo* the sufficiency of the government's evidence produced at trial, viewing the evidence in the light most favorable to the prosecution, with all reasonable inferences and credibility choices made in the government's favor. *United States v. SPARC*, 568 F.3d 1236, 1244 (11th Cir. 2009). However, when a defendant presents rebuttal evidence after the denial of a motion for judgment of acquittal based on the government's case-in-chief, he has waived the right to challenge the sufficiency of the evidence based solely on the government's presentation of evidence. *United States v. Alexandra*, 118 F.3d 1518, 1520-21 (11th Cir. 1997). Consequently, where a defendant presents evidence, we will review all of the evidence presented, not just the evidence presented by the government. *Id.* at 1521. Moreover, when a defendant presents evidence, and asks the jury to evaluate his evidence against the government's case, he "cannot insulate himself from the risk that the evidence will be favorable to the government." *United States v. Thomas*, 987 F.2d 697, 702 (11th Cir. 1993) (internal quotation marks omitted).

"[I]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilty,

provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Merrill*, 513 F.3d 1293, 1299 (11th Cir. 2008) (quotation omitted).  Thus, "our sufficiency review requires only that a guilty verdict be reasonable, not inevitable, based on the evidence presented," because "the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." *United States v. Woodard*, 531 F.3d 1352, 1360 (11th Cir. 2008) (internal quotation marks omitted).  The credibility of a witness is the "sole province" of the jury. *United States v. Hamaker*, 455 F.3d 1316, 1334 (11th Cir. 2006). Additionally, it is the jury's responsibility to weigh and resolve conflicts in the evidence. *United States v. Pearson*, 746 F.2d 787, 794 (11th Cir. 1984).

It is illegal for any person to knowingly produce, traffic in, have control or custody of, or possess device-making equipment with intent to defraud.  18 U.S.C. § 1029(a)(4).  "[T]he term 'device-making equipment' means any equipment, mechanism, or impression *designed or primarily used* for making an access device or a counterfeit access device."  *Id.* § 1029(e)(6) (emphasis added).  The term "access device" is defined as "any card, plate, code, account number, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or other thing of value, or that can

3

be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument)." *Id.* § 1029(e)(1). Intent to defraud has often been defined as "the specific intent to deceive or cheat, for the purpose of either causing some financial loss to another, or bringing about some financial gain to one's self." *United States v. Klopf*, 423 F.3d 1228, 1240 (11th Cir. 2005) (internal quotation marks omitted).

It appears that we have analyzed § 1029(a)(4) in depth only once. *See United States v. Morris*, 81 F.3d 131 (11th Cir. 1996). Although § 1029 has been amended since we considered the statute in *Morris*, the amendments are not relevant to this case. *See id.* at 134 (noting that Congress had amended § 1029(a)(4) to specifically criminalize possession of the cell phones at issue in the case); *see also United States v. Sepulveda*, 115 F.3d 882, 885 n.5 (11th Cir. 1997) (noting that § 1029 had been amended in 1994 to include telecommunications equipment identifier as an "access device").

In *Morris*, the defendant had been convicted under a prior version of § 1029 for possessing and selling altered cell phones that could access cellular services without charge. *Morris*, 81 F.3d at 132. In particular, the cell phones had altered microchips that could be reprogrammed by a user to allow for free long-distance phone calls. *Id.* In *Morris*, we analyzed the particular use to which the defendant

put the devices – the phone themselves, including the microchips – and determined that they were technically not "designed or primarily used for making an access device," as they were primarily used and designed to make telephone calls, not to make reprogrammed microchips that allowed for free phone calls. *Id.* at 133-34.

We held in *Morris* that the relevant device-making equipment was the equipment used to make the altered microchip in the cellular phone and "not the actual altered cellular phone itself," and that the altered microchip, not the phone, permitted the owner to commit a fraud. *Id*. Moreover, we held that § 1029(a)(4) was "applicable only to those devices which access[ed] an individual account, such as a credit card," because, to find otherwise, would "turn § 1029 into a general theft statute applicable whenever a company can document a loss through fraud." *Id.* at 134 (internal quotation marks omitted) (noting, however, that § 1029 had been amended after the defendant's conduct, and the amended statute specifically criminalized the defendant's conduct).

Although we have yet to interpret the phrase "intent to defraud," as used in § 1029(a)(4), in other instances, we have held that, unless a statute specifies an intended victim, the phrase is "comprehensive," making it "immaterial whether the offender intended to defraud the government or some particular individual." *See United States v. Bradshaw*, 840 F.2d 871, 875 (11th Cir. 1988) (interpreting other

5

counterfeiting statutes, and stating that if Congress intended to limit the intent requirement to a particular victim, "it would have plainly said so").  In other contexts, we have held that where a specific, identifiable victim is not listed as an element of the offense, it is not relevant whether the defendant "personally knew of, communicated with, or directed activities towards" any of the victims of the offense.  *See United States v. Munoz*, 430 F.3d 1357, 1369 (11th Cir. 2005).  Moreover, all knowing participants in a fraudulent scheme are legally liable for the actions of an individual who acts to carry out the scheme.  *Id.* (citation omitted).  Additionally, a jury may infer an intent to defraud from the defendant's conduct.  *See United States v. Hawkins*, 905 F.2d 1489, 1496 (11th Cir. 1990) (explaining that the government need not produce direct proof of scienter in a fraud case, but, instead, can rely on circumstantial evidence of criminal intent).

Here, even Bautista's own witness stated that the equipment seized in the case was capable of making reasonable facsimiles of credit cards.  A government witness stated that these facsimiles could be used just like actual credit cards to make purchases from unsuspecting vendors.  The evidence also showed that Bautista and a codefendant: (1) advertised their equipment as having the capability to make counterfeit credit cards; (2) explained how to make counterfeit credit cards; and (3) were fully aware that the government's confidential informant

intended to make counterfeit credit cards. Moreover, Bautista's efforts to conceal the nature of the transaction evidenced knowledge that the equipment was not designed solely to produce employer identification cards, as he suggests. Additionally, because § 1029(a)(4) is not limited to any particular victim, it is immaterial whether Bautista personally knew of, had any contact with, or directed any activities towards any specific victim. Because we conclude from the record that the evidence was sufficient to convict Bautista of the offense charged, we affirm his conviction.

**AFFIRMED.**